**KREHER & TRAPANI LLP**
Francesco P. Trapani, Esq.
100 East Penn Square, Suite 400
Philadelphia, PA 19107
Tel: (215) 907-7290
Fax: (215) 907-7287
frank@krehertrapani.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Calogero Trapani** | : Document Electronically Filed |
| **Plaintiff** | : |
| | : Civil Action No. _____ |
| v. | : |
| | : **VERIFIED COMPLAINT** |
| **City of Hackensack & Thomas Freeman, individually and in his official capacity as City Manager** | : |
| **Defendants.** | : |

## VERIFIED COMPLAINT

Plaintiff Calogero Trapani, by and through undersigned counsel, respectfully submits the following Verified Complaint against the above-captioned defendants and alleges as follows:

### INTRODUCTION

1. This case is about how the City of Hackensack and its City Manager retaliated against a highly decorated, 30-year fire service veteran with a spotless record and numerous commendations because he exercised his First Amendment right to engage in public protest, petition for redress of grievances, and union activity.

2. Plaintiff, Captain Calogero Trapani, led and spoke publicly in favor of a union vote of no confidence against then–Fire Chief Thomas Freeman. Freeman resigned as chief of the Hackensack Fire Department ("Department") shortly thereafter.

3. About two years later, Freeman became City Manager. As City Manager, Freeman was responsible for approving promotions within the Department.

4. Once in that role, Freeman used his authority as final decision maker to retaliate against Plaintiff by denying him a long-earned promotion to Deputy Chief, refusing to request certification or an extension of a valid Civil Service eligibility list, allowing it to expire, and bypassing Plaintiff in favor of others.

## PARTIES

5. Plaintiff Calogero Trapani ("Plaintiff") is a Captain in the Department, a 30-year veteran, and the top-ranked candidate on the Deputy Fire Chief promotional eligibility list that remained valid through at least September 29, 2025.

6. Defendant City of Hackensack is a municipal corporation organized under New Jersey law.

7. Defendant Thomas Freeman is the City Manager of Hackensack and is sued both in his official and individual capacities.

## JURISDICTION AND VENUE

8. This action arises under the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

9. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Hackensack, New Jersey.

## FACTUAL ALLEGATIONS

11. Plaintiff is a 30-year veteran with a spotless service record, numerous commendations, and more confirmed rescues than nearly any other active Hackensack firefighter.

12. In or about 2023, while Freeman was Fire Chief, Plaintiff personally orchestrated, called for, and led a union vote of no confidence against him due to incompetence and safety risks that placed the Department in jeopardy.

13. The results of that union vote were made public and conveyed to the City of Hackensack and therefore constitute both speech and petitioning activity protected by the First and Fourteenth Amendments to the U.S. Constitution and the New Jersey Constitution.

14. Shortly after the no-confidence vote, and amidst the tremendous public pressure created by it, Freeman resigned as Chief of the Department. Freeman has resented Plaintiff's role in the no-confidence vote ever since.

15. Under New Jersey law, promotions within the Department are governed by a ranked eligibility list issued by the New Jersey Civil Service Commission ("Commission") pursuant to the Civil Service Act, N.J.S.A. 11A:1-1 et seq., and implementing regulations, N.J.A.C. 4A:4-3.1 *et seq*. To obtain a place on the Deputy Fire Chief eligibility list, candidates must, among other requirements, take and pass a competitive written examination administered or certified by the Commission (the "Deputy Fire Chief Examination").

16. Under N.J.A.C. 4A:4-4.8, an appointing authority such as the City Manager must make promotions from among the highest-ranked candidates on a certified eligibility list under the Commission's "Rule of Three." The appointing authority may not bypass a higher-ranked candidate except for legitimate, documented reasons recognized by the Commission, and may not manipulate or allow a list to expire for retaliatory or pretextual purposes.

17. In 2022, Plaintiff took the Deputy Fire Chief Examination to make himself eligible for the Deputy Fire Chief list that the Commission would issue later that year.

18. In September 2022, the Civil Service Commission promulgated the Deputy Fire Chief eligibility list for the Department. Plaintiff initially ranked fifth on that list. Under N.J.A.C. 4A:4-3.3(b), promotional eligibility lists remain in force for three years from their promulgation date unless extended by the Civil Service Commission for good cause. Accordingly, the 2022 list was scheduled to expire on September 29, 2025.

19. By early 2025, Plaintiff had advanced to first on the September 2022 list. At that time, City Manager Vincent Caruso assured Fire Chief Anthony Riehl that Plaintiff would be promoted to Deputy Chief if a vacancy arose before the list's expiration. Caruso remained City Manager until August 2025, when he was replaced by Thomas Freeman.

20. At multiple points in 2024 and early 2025, Caruso reaffirmed those assurances, directing Chief Riehl that Plaintiff's promotion would be effected as soon as a Deputy Chief vacancy became available. Caruso intended that assurance to be conveyed to Plaintiff, and Chief Riehl did so on several occasions.

21. Relying reasonably on those representations, Plaintiff did not sit for the May 2025 Deputy Chief examination required for eligibility on the next list. Plaintiff's reliance was foreseeable and caused by the City's own assurances through its duly authorized City Manager.

22. By at least August 2025, Fire Chief Anthony Riehl had formally tendered his resignation to the City. Under N.J. Admin. Code § 4A:2-6.1, Chief Riehl's resignation became effective upon its tender and receipt by the appointing authority, and was therefore final as of that date.

23. In early September 2025, Chief Riehl requested that City Manager Thomas Freeman seek certification from the Civil Service Commission to promote Plaintiff from the still-valid September 2022 Deputy Fire Chief eligibility list.

24. Freeman, however, refused to act on Chief Riehl's request or to submit the certification to the Commission.

25. Under Civil Service regulations, the appointing authority may request certification in advance of a known or anticipated vacancy and, where a valid list is nearing expiration, may also seek an extension of that list for good cause pursuant to N.J.A.C. 4A:4-3.3(b). Freeman did neither. Despite having clear notice of Chief Riehl's resignation and the resulting vacancy, he refused to request certification or seek an extension before the September 29, 2025.

26. Freeman's refusal ensured that the 2022 list would expire without Plaintiff's promotion and served no legitimate administrative purpose. Plaintiff and the firefighters' union urged Freeman to act on the request, but he declined, knowing that Plaintiff had not taken the May 2025 Deputy Fire Chief examination and that the expiration of the 2022 list would remove Plaintiff from eligibility.

27. Freeman's refusal to follow Chief Riehl's early-September certification request marked a clear departure from prior practice and directly resulted in the expiration of the valid 2022 list before Plaintiff's promotion could take effect, despite his ability to request certification or seek an extension under Civil Service rules.

28. Freeman's refusal to act on the valid list was motivated by retaliatory animus stemming from Plaintiff's role in organizing and leading the union vote of no confidence that had publicly embarrassed Freeman and contributed to his resignation as Fire Chief.

29. On September 23, 2025, Plaintiff's counsel sent a letter to City Manager Freeman, Mayor Gaines, the City Council, and City Attorney Malagiere explaining Freeman's history with Plaintiff and notifying them that Freeman's refusal to certify Plaintiff's promotion was retaliatory and unlawful.

30. That same day, September 23, 2025, the City Council canceled its publicly scheduled meeting, preventing the union, Chief Riehl and members of the public from providing additional information about Freeman's misconduct. The City Council instead held a closed-door executive session with Freeman, Mayor Carson Gaines, the Council, and City Attorney Richard Malagiere.

31. Despite receiving explicit notice that Freeman's refusal was retaliatory, the Mayor and Council, after consulting with the City Attorney, deliberately chose to take no corrective action. Their inaction ratified Freeman's conduct and reflected a municipal policy or custom of permitting retaliation against protected union activity.

32. On or about September 29, 2025, the union president spoke directly with Mayor Gaines and urged him to intervene.

33. The Mayor refused, stating he would defer entirely to Freeman, effectively acknowledging Freeman as the final decision maker for promotions.

34. Under the Hackensack Municipal Code, the City Manager is expressly designated as the City's chief executive officer and vested with authority over personnel matters, including hiring, promotion, and discipline.

35. The Mayor's explicit acknowledgment that he would defer entirely to Freeman confirmed that Freeman was the final decision maker on promotions, and that his retaliatory refusal to certify the eligibility list represented the official policy of the City of Hackensack.

36. Because the September 2022 list remained operative until the new list was formally promulgated, the City of Hackensack was required to make any appointments occurring on or about October 1 from that still-valid list.

37. Despite the operational necessity and Chief Riehl's prior request, Freeman refused to act on the valid 2022 list.

38. Freeman's refusal to pursue either certification or extension deprived Plaintiff of any remaining avenue for promotion, completing the retaliatory act.

39. As a result of Defendants' conduct, Plaintiff lost his promotion, career advancement, seniority benefits, pension adjustments, and the prestige associated with the Deputy Chief position.

## COUNT I
**First and Fourteenth Amendment Retaliation (42 U.S.C. § 1983) (Against Freeman)**

40. Plaintiff incorporates the preceding paragraphs herein.

41. Plaintiff engaged in constitutionally protected activity by orchestrating and leading a union vote of no confidence against Defendant Freeman while Freeman was Fire Chief.

42. After becoming City Manager, Defendant Freeman, acting under color of state law, retaliated against Plaintiff for engaging in that activity by refusing to request certification or an extension of the Deputy Chief promotional list while it remained valid.

43. These actions constitute an adverse employment action, as they deprived Plaintiff of promotion, career advancement, pension adjustments, and professional standing.

44. The animus motivating Freeman's refusal to certify the list and his manipulation of the promotional process establishes a causal connection between Plaintiff's protected activity and the adverse employment action.

45. Defendant Freeman's conduct violated Plaintiff's rights under the First Amendment, as incorporated against state actors through the Fourteenth Amendment, and is actionable under 42 U.S.C. § 1983.

46. Plaintiff is entitled to compensatory damages, punitive damages against Freeman in his individual capacity, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II
### Monell Liability (42 U.S.C. § 1983) (Against City of Hackensack)

47. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

48. The City of Hackensack is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because the retaliatory actions of City Manager Thomas Freeman, acting with final policymaking authority, constituted official municipal policy.

49. The Hackensack Municipal Code designates the City Manager as the City's chief executive officer with final authority over personnel and promotional decisions, including appointments and promotions.

50. Acting in that capacity, Freeman made the retaliatory decision to refuse to request certification or an extension of the promotional list, allowing it to expire.

51. Alternatively, the City Council and Mayor, after receiving Plaintiff's September 23, 2025 letter placing them on notice of Freeman's retaliatory conduct, convened in executive session, were advised by the City Attorney, and knowingly acquiesced in Freeman's refusal to certify the promotional list.

52. Their deliberate choice to disregard the letter and take no corrective action constitutes ratification of Freeman's unconstitutional conduct and also establishes an official policy or custom of permitting retaliation against protected union activity.

53. Accordingly, the City of Hackensack is liable under § 1983, entitling Plaintiff to damages, retroactive promotion, injunctive relief, attorney's fees, and all other relief authorized under law.

## COUNT III
### New Jersey Civil Rights Act (N.J.S.A. 10:6-2)
### (Against Freeman and the City of Hackensack)

54. Plaintiff incorporates the preceding paragraphs herein.

55. Defendants' conduct violated Plaintiff's rights under the New Jersey Constitution, including Article I, ¶ 6 (protecting free speech and association) and Article I, ¶ 19 (guaranteeing public employees the right to organize and present grievances).

56. Plaintiff engaged in protected activity by organizing and leading a union vote of no confidence against Defendant Freeman, and later by petitioning government officials through his counsel's September 23, 2025 letter.

57. Defendants retaliated against Plaintiff by refusing to certify the valid Deputy Chief eligibility list.

58. The New Jersey Civil Rights Act, N.J.S.A. 10:6-2, creates a direct cause of action for the vindication of state constitutional rights.

59. The Hackensack Municipal Code designates the City Manager as the chief executive officer with final authority over personnel and promotional decisions, including appointments and promotions. Acting in that capacity, Freeman retaliated against Plaintiff by refusing to request certification or an extension of the promotional list, allowing it to expire. His decision therefore constituted official municipal action under the NJCRA.

60. Alternatively, the City Council and Mayor, after receiving Plaintiff's September 23, 2025 letter placing them on notice of Freeman's retaliatory conduct, convened in executive session, were advised by the City Attorney, and knowingly acquiesced in Freeman's refusal to certify the promotional list.

61. Their deliberate choice to disregard the letter and take no corrective action constitutes ratification of Freeman's unconstitutional conduct and also establishes a municipal policy or custom of permitting retaliation against protected union activity.

62. Accordingly, Defendants are liable under the NJCRA, entitling Plaintiff to damages, retroactive promotion, injunctive relief, attorney's fees, and all other relief authorized under law.

## COUNT IV
### (Promissory Estoppel) (Against City of Hackensack)

63. Plaintiff incorporates the preceding paragraphs herein.

64. In early 2025, then–City Manager Caruso promised Fire Chief Riehl that Plaintiff would be promoted to Deputy Chief from the current eligibility list, and he intended Chief Riehl to convey that promise to Plaintiff and for Plaintiff to rely on it. Chief Riehl conveyed that promise directly to Plaintiff and repeated it throughout 2025, often in the presence of other firefighters.

65. As City Manager, Caruso was the chief executive officer of the City of Hackensack and under the Hackensack Municipal Code, he was vested with authority over personnel matters, including promotions.

66. In making and communicating this assurance to Fire Chief Riehl, Caruso was acting within the scope of his authority as City Manager and bound the City of Hackensack to that promise.

67. Plaintiff reasonably and foreseeably relied on those assurances by foregoing the May 2025 Deputy Chief examination.

68. Defendants' subsequent refusal to certify the list and denial of promotion, despite these repeated assurances, caused Plaintiff substantial harm, including the loss of promotion, wages, benefits, pension enhancements, and professional standing.

69. Equity estops the City from denying the promise made by its duly authorized City Manager, and justice can only be served by enforcing it.

70. Plaintiff is entitled to equitable relief in the form of retroactive promotion to Deputy Chief, with back pay, pension adjustments, and restoration of seniority.

71. In the alternative, Plaintiff is entitled to reliance damages to compensate for the tangible harm caused by his reasonable reliance on the City Manager's assurance, including the lost opportunity to sit for the May 2025 exam and the consequential loss of promotion, benefits, and career advancement.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

a. Declare that Defendants violated his constitutional and statutory rights;

b. Award compensatory damages, including but not limited to:

   i. Back pay for lost wages and benefits Plaintiff would have received as Deputy Chief;

   ii. Front pay or instatement to Deputy Chief to remedy ongoing harm;

   iii. Lost pension credits and retirement benefits;

   iv. Emotional distress, humiliation, and reputational harm;

c. Award punitive damages against Freeman individually;

d. Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and NJCRA;

e. Issue injunctive relief ordering the City to:

   i. Retroactive promotion to Deputy Chief effective as of the date Plaintiff would have been promoted but for Defendants' retaliation, with corresponding back

        pay, seniority, and pension adjustments; and reinstatement or instatement to Deputy Chief as appropriate;

    ii. Reinstatement of Plaintiff as Deputy Chief with full seniority and benefits

f. Grant such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution.

Respectfully submitted,

**KREHER & TRAPANI LLP**

Date: October 16, 2025

/s/ *Francesco P. Trapani*
Francesco P. Trapani, Esquire
KREHER & TRAPANI LLP
100 East Penn Square, Suite 400
Philadelphia, PA  19107
Phone (215) 907-7290
Fax (215) 907-7287
frank@krehertrapani.com

## VERIFICATION

I, Calogero Trapani, being of full age, certify:

I am the plaintiff in this action and hereby verify that I have read the complaint and that the allegations contained therein are true to the best of my knowledge, information and belief.

I certify that the foregoing statements made by me are true. I am aware that if any are willfully false, I am subject to punishment.

October 16, 2025

_____
Calogero Trapani