**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CALOGERO TRAPANI,

    *Plaintiff*,

    v.

CITY OF HACKENSACK, THOMAS
FREEMAN, individually and in his official
capacity as City Manager,

    *Defendants*.

Civil Action No. 25-16670

ORDER

    **THIS MATTER** comes before the Court by way of a Motion to Dismiss filed by the City

of Hackensack and Thomas Freeman ("Defendants") pursuant to Fed. R. Civ. P. 12(b)(6), ECF

No. 4 ("Motion"); [1]

    and it appearing that Plaintiff Calogero Trapani ("Plaintiff") has opposed the Motion, ECF

No. 7 ("Opposition"); [2]

    and it appearing that Plaintiff alleges that despite his eligibility for promotion to Deputy

Fire Chief, he was not promoted because he had previously engaged in activity protected by the

First Amendment, see generally, ECF No. 1 ("Complaint");

---

[1] In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to support a facially plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] Plaintiff has also filed a Motion for Leave to File a Sur-Reply. See ECF No. 9. Because Defendants' Reply in Support of its Motion to Dismiss, ECF No. 8 ("Reply"), included a new argument and exhibits, the Court considered Plaintiff's sur-reply for the sake of completeness when deciding the Motion. See Williams v. Inspira Health Network, No. 22-7, 2023 WL 7151222 (D.N.J. Oct. 31, 2023) ("The Court has complete discretion to permit sur-replies. However, in making this determination, Courts typically consider whether the movant's reply includes new arguments such that it is prudent to permit the respondent an opportunity to address the new content.")

and it appearing that Plaintiff alleges that in or about 2023, while Defendant Thomas Freeman ("Freeman") was the Hackensack Fire Chief, Plaintiff personally orchestrated, called for, and led a union vote of no confidence ("No Vote") against him, see Compl. ¶ 12;

and it appearing that following the No Vote, Freeman resigned as Fire Chief, see id. ¶ 14;

and it appearing that promotions within the Fire Department are governed by a ranked eligibility list issued by the New Jersey Civil Service Commission pursuant to N.J.S.A. 11A:4-4 et seq., see id. ¶ 15;

and it appearing that in order for one's name to appear on the eligibility list, he must take and pass an examination, see id. ¶ 15;

and it appearing that in 2022, Plaintiff took the Deputy Fire Chief Examination to become eligible for promotion, see id. ¶ 17;

and it appearing that in September 2022, the eligibility list was released ("2022 List"), see id. ¶ 18;

and it appearing that when it was released, Plaintiff ranked fifth on the 2022 List, see id.;

and it appearing that the 2022 List was set to expire three years later, on September 29, 2025, see id.;

and it appearing that by early 2025, Plaintiff had advanced to first on the 2022 List, see id. ¶ 19;

and it appearing that in 2024 and 2025, then-City Manager Vincent Caruso ("Caruso") "assured Fire Chief Anthony Riehl [("Riehl")] that Plaintiff would be promoted to Deputy Chief if a vacancy arose before the list's expiration," id. ¶ 19;

and it appearing that Riehl conveyed such representations to Plaintiff, see id. ¶ 20;

and it appearing that relying on those representations, Plaintiff did not take the May 2025 Deputy Fire Chief examination, see id. ¶ 21;

and it appearing that in August 2025, Freeman replaced Caruso as City Manager, see id. ¶ 19;

and it appearing that Plaintiff alleges that sometime in or around August 2025, Riehl formally tendered his resignation to the City, see id. ¶ 22;

and it appearing that in early September 2025, Riehl requested that Freeman seek certification from the Civil Service Commission to promote Plaintiff from the still-valid 2022 List, see id. ¶ 23;

and it appearing that Freeman did not submit the certification to the Civil Service Commission, see id. ¶ 24;

and it appearing that Freeman did not seek extension of the 2022 List, see id. ¶ 25;

and it appearing that the 2022 List expired on September 29, 2025, see id. ¶ 18;

and it appearing that Freeman's refusal to certify or extend the validity of the 2022 List meant that Plaintiff could not be promoted to Deputy Chief, see id. ¶ 38;

and it appearing that on October 16, 2025, Plaintiff initiated this action by filing the Complaint, which asserts four claims against Defendants, see Compl. ¶¶ 40–71;

and it appearing that Plaintiff brings a claim against Freeman for retaliation under the First and Fourteenth Amendments based on 42 U.S.C. § 1983 (Count I), see id. ¶¶ 40–46;

and it appearing that for a government employee to state a First Amendment retaliation claim, a plaintiff must allege that (1) the activity he engaged in was constitutionally-protected and (2) the protected activity was a substantial factor in the alleged retaliatory action, see Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005);

and it appearing that an employer may defeat an employee's claim by demonstrating that the same adverse action would have taken place absent the constitutionally-protected conduct, <u>see id.</u>

and it appearing that Plaintiff engaged in constitutionally protected activity when he led the No Vote against Freeman, <u>see id.</u> ¶ 41;

and it appearing that Plaintiff has plausibly alleged that Riehl's resignation may have been effective before October 1, 2025, creating a Deputy Chief position vacancy,[3] <u>see id.</u> ¶ 22;

and it appearing that if the Deputy Chief position was vacant before October 1, 2025, Plaintiff would have been eligible for such position, <u>see id.</u> ¶ 25;

and it appearing that Plaintiff has plausibly alleged that the No Vote was a substantial factor in Freeman's decision not to promote him when he either was eligible or would have been eligible had the list been extended;[4]

and it appearing that whether the same adverse action would have taken place absent the constitutionally-protected conduct is a fact issue that cannot be resolved on a motion to dismiss, <u>see, e.g.</u>, <u>Corcoran v. Cauwels</u>, No. 18-13875, 2023 WL 2784388, at *14 (D.N.J. Apr. 5, 2023) ("[W]hether the same promotional decision would have been reached in the absence of the protected activity is a question for the jury");

and it appearing that the Court therefore denies the Motion as to Count I;

---

[3] Relying on an email chain between the City and Riehl, Defendants argue that Riehl's resignation was not effective until October 1, 2025, after the list already expired, such that Plaintiff could not have been promoted and no adverse action could be taken against him. <u>See generally</u>, Reply and Exhibits A and B to the Declaration of Srujal Desai (ECF No. 8.1). This fact issue, however, cannot be resolved at the motion to dismiss stage, and Plaintiff has plausibly alleged that the resignation was tendered before October l.

[4] Defendants move to dismiss all claims generally, but do not specifically address Count II, municipal liability pursuant to <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978). Given Defendant Freeman's status as an arguable "decision-maker with final authority," the Court will let this claim, and its New Jersey Civil Rights Act ("NJCRA") counterpart claim go forward. <u>Holliday v. City of Elizabeth</u>, No. 13-1006, 2018 WL 953346, at *11 (D.N.J. Feb. 20, 2018) (citation omitted).

and it appearing that Plaintiff brings a claim against Freeman and Hackensack for violations of the NJCRA, N.J.S.A. § 10:6-2 (Count III), see id. ¶¶ 54–62;

and it appearing that courts in New Jersey have consistently considered Section 1983 claims and NJCRA claims together, see, e.g., Zisa v. Haviland, No. 17-5551, 2020 WL 1527862, at *8 (D.N.J. Mar. 31, 2020) (quoting Velez v. Fuentes, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) ("The NJCRA was modeled after § 1983, and so courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983 and have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart");

and it appearing that for the same reasons that Plaintiff has adequately stated a claim against Freeman and Hackensack for violation of Section 1983, Plaintiff has adequately stated a claim against Freeman and Hackensack for violation of the NJCRA;

and it appearing that "[p]romissory estoppel requires four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment," Nye v. Ingersoll Rand Co., 783 F. Supp. 2d 751, 765–66 (D.N.J. 2011) (quoting Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 944 A.2d 1, 19 (2008));

and it appearing that the promise was that Plaintiff "would be promoted to Deputy Chief if a vacancy arose before the list's expiration," see Compl. ¶ 19;

and it appearing that Plaintiff contends that he relied on the promise to his detriment when he did not sit for the May 2025 exam, see id. ¶ 67;

and it appearing that Plaintiff's reliance on the promise as of May 2025, could not be reasonable because at that time, he could not have known whether a vacancy would arise before the list's expiration;

and it appearing that a promissory estoppel claim requires that the Plaintiff reasonably relied on the promise, see Nye, 783 F. Supp. 2d at 766;

and it appearing that "[i]ndefinite promises or promises subject to change by the promisor are not clear and definite and cannot give rise to a claim for promissory estoppel," see Magic Reimbursements LLC v. T-Mobile USA, Inc., No. 22-2121, 2023 WL 4866930, at *12 (D.N.J. July 31, 2023);

and it appearing that the promise made to Plaintiff was insufficiently clear or definite to give rise to a claim of promissory estoppel,

and it appearing that the Court consequently grants the Motion as to Count IV;

**IT IS** on this 25 day of June, 2026;

**ORDERED** that Defendants' Motion to Dismiss, ECF No. 4, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Count IV of Plaintiff's Complaint is hereby **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply, ECF No. 9, is **GRANTED**.

_s/ Madeline Cox Arleo_
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**